[Civ. No. 17178.   Second Dist., Div. One.   May 1, 1950.]

JAMES E. WEST, Respondent, v. ROBERT H. PARKER et al., Appellants.

Holbrook & Tarr, Leslie R. Tarr and Freda B. Walbrecht for Appellants.

Wood, Crump, Rogers, Arndt & Evans, Edward Alton, Guy Richards Crump and M. W. Young for Respondent.

DRAPEAU, J.—Defendant, Robert H. Parker, acquired record title to a tract of 8 6/7 acres of land in Pasadena. He purchased and secured deeds from several residuary legatees in an insolvent probate estate, and the property was sold by the probate court to a third party, who in turn conveyed to him.

No taxes had been paid on the land for years. So Mr. Parker secured $14,250 from plaintiff to pay the taxes. The plan was to clear title to the tract, and to subdivide and sell it.

Plaintiff and Mr. Parker entered into a written agreement, which, omitting description, is as follows:

"AGREEMENT FOR PURCHASE AND SALE OF REAL PROPERTY

"THIS AGREEMENT, made in triplicate this 23rd day of June, 1945, between Robert H. Parker and Jessie Lee Parker, joint tenants, herein called Seller, and James E. West, herein called Buyer,

"WITNESSETH: that Seller, in consideration of the covenants and agreements of Buyer herein contained, agrees to sell and convey unto Buyer and Buyer agrees to buy one-half undivided right, title and interest in the real property situate in the City of Pasadena, County of Los Angeles, State of Cali-

fornia, hereinafter referred to as "said realty" and described as follows:

. . . . . . . . . . . . . . .

"Subject To: Conditions, restrictions, reservations and easements of record, if any, for the principal sum of Fourteen thousand two hundred fifty Dollars ($14,250.00) lawful money of the United States, of which principal sum Seller, by execution of this Agreement acknowledges receipt of Ten Dollars ($10.00) and Buyer in consideration of the premises, promises and agrees to pay Seller through escrow the remainder of said principal sum, said money to be used to pay the taxes of the City of Pasadena and County of Los Angeles.

"It is also agreed that Robert H. Parker will prepare subdivision maps and be paid at the rate of $1.50 per hour for surveys and preparation of same. Said surveys are not to exceed in cost $500.00.

"It is mutually agreed that sub-division map will be recorded immediately upon payment of taxes and lots offered for sale. Net profits from sale of said lots shall be divided equally between Seller and Buyer, above. It is further understood and agreed that the first $320 collected on the sale of each of the above said lots shall be paid to James E. West until such time as he has received back his principal payment of $14,250.00.

Robert H. Parker
Jessie Lee Parker
James E. West"

Plaintiff paid the money; it was used to pay the taxes; and Mr. Parker and his wife conveyed by their deed an undivided one-half interest in the tract to him.

Mr. Parker started to carry the project through the tortuous paths of subdivision: to prepare the subdivision maps, to have them approved by the city of Pasadena; and to prepare plans, arrange for, and superintend the requisite improvement work—streets, curbs, sewers and public utilities. He testified that he was delayed by public officers charged with approving the map and work, he thought because he planned to sell lots in the subdivision to colored folks.

He procured a bond for $20,000, to insure payment of the cost of the improvement work, to be deposited with the city of Pasadena. Then he conveyed his remaining one-half interest in the tract to Mr. and Mrs. Marvil, his son-in-law and daughter.

To indemnify the bonding company against loss, a trust deed and note were made to it by the record owners of the property at that time, plaintiff and Mr. and Mrs. Marvil. These record owners then entered into two agreements concerned with this case, subsequent in time, of course, to the original agreement between plaintiff and Mr. Parker. The latter agreements defined the rights of the owners in connection with the obligation to the bonding company, and provided that one half of the proceeds from lot sales should go to the bonding company up to $20,000, and that "the remaining one-half (½) of the sales price of the lots sold . . . shall be applied to and actually used in the payment of the construction work performed on said subdivision improvement which is the subject matter of this contract." To this extent the covenant to pay plaintiff $320 per lot as sold was modified.

Later the bonding company demanded cash to cover the bond. This demand was met by borrowing $15,000 and using $5,000 from moneys paid for lots. The trust deed and note were assigned to secure repayment of the $15,000 borrowed.

Just as Mr. Parker was obtaining deposits on lot sales, and the improvement work was under way, he found himself enmeshed in a most vexatious lawsuit. Two legatees of the estate from whence came the title sued him because they had not quitclaimed along with the other legatees. Also, they alleged that at the time the probate sale was made, Mr. Parker was administrator with the will annexed of the probate estate, and caused the sale to be made to himself through a dummy purchaser.

When this happened, the title company refused to write policies of title insurance on lots, and none could be sold. So that lawsuit just had to be settled. It was compromised, and the claimants were paid $1,250. And Mr. Parker incurred liability for substantial counsel fees to get him out of his legal difficulty.

When all but one or two of the lots were sold and the several obligations of the project paid, plaintiff and Mr. Parker could not agree upon the final division of the proceeds of the subdivision sales. Mr. Parker claimed equal division of the profits, without payment of $14,250 to plaintiff first. He also claimed compensation for the expense of the lawsuit above mentioned, $1,250 to settle it, and $1,250 counsel fees; for clerical work done by his wife, $4,900; for office rent for a

room in his own house, $525; for telephone services, $490; and for 15 per cent overriding commission for supervision and engineering of the street improvements, $5,173.50.

Plaintiff brought this action for an accounting, a receiver was appointed, and after trial judgment followed: (1) that the contracts and conduct of the parties established a joint adventure to subdivide and sell the real property; (2) that the plaintiff first be paid $14,250; (3) that the assets of the joint adventure be distributed equally between plaintiff and Mr. Parker, after surcharging Mr. Parker $9,018.66 and paying the expenses of the receivership; and (4) that the Marvils held bare legal title only to the one-half interest in the tract of record in them, the real parties in interest being the plaintiff and defendant, Mr. Parker.

With respect to the specific items claimed by Mr. Parker, the court found that he was entitled to compensation in the amount of 15 per cent of the cost of the street improvements for supervision and engineering, $5,173.50; and that the following were not proper charges: amounts claimed for settlement of the lawsuit mentioned, clerical work, office rent, and telephone services.

All the defendants appeal, and contend: (a) that the finding of a joint adventure is erroneous; that the plaintiff purchased an undivided one-half interest in the property and was a tenant in common with the defendants; (b) that the several findings as to charges against the enterprise are erroneous, except, of course, $5,173.50 allowed Mr. Parker for his services in connection with the improvement work; (c) that the expense of the receivership should not have been allowed, because it was not necessary; and (d) that the plaintiff is estopped to question the ownership of defendants Mr. and Mrs. Marvil.

In other words, defendants contend that the contract provides that after payment of $500 to Mr. Parker for preparing the plans for the improvements, all profits from the subdivision were to be divided equally between Mr. Parker and plaintiff as tenants in common, plaintiff having purchased for $14,250 an undivided one-half interest in the tract, *as was*; that it was error to receive parol evidence to explain the term ''net profits'' as used in the contract, that instrument being clear, plain, and unambiguous.

This is the principal question for determination. Substantial evidence upholds the findings as to allowance or disallowance of the several charges claimed, whether the accounting

was in a joint adventure or for sales of property held in common tenancy. Also the evidence sustains the finding as to the *status* of the daughter and son-in-law. And there is no estoppel in plaintiff's relations with them.

The original contract may be paraphrased as follows: Plaintiff paid $14,250 to Mr. Parker to pay the taxes; Mr. and Mrs. Parker were to convey to plaintiff an undivided one-half interest in the real property; Mr. Parker agreed to survey the land and prepare subdivision maps at a cost not to exceed $500; the subdivision map was to be recorded immediately and the lots offered for sale; the net profits were to be divided equally between Mr. Parker and the plaintiff, and as the lots were sold, plaintiff was to receive $320 from each lot until he "received back" his $14,250.

The construction placed upon the contract by the trial court is helped by the language of the contract. Giving effect to the words "received back," in endeavoring to ascertain the intent of the parties, supports the theory of the findings that the plaintiff was to get his money out first, and then to share in the net profits, and that the transaction was a joint adventure. In any event, the contract is sufficiently ambiguous to warrant judicial determination by parol evidence of the intent of the parties.

This leaves, then, only the contention of appellants that the order appointing the receiver was void, because receivership was unnecessary. The order appointing the receiver was an appealable order. (Code Civ. Proc., § 963.) On an appeal from a final judgment the court may not review any order from which an appeal could have been taken. This rule includes orders appointing receivers. (Code Civ. Proc., § 956; *Weygandt* v. *Larson*, 130 Cal.App. 304 [19 P.2d 852].)

The appeal from the order denying new trial is dismissed; the judgment is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied May 15, 1950, and appellants' petition for a hearing by the Supreme Court was denied June 29, 1950.